# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUANA BEATRIZ HERNANDEZ,<br><br>Petitioner,<br><br>v.<br><br>PAMELA BONDI, et al.,<br><br>Respondents. | Case No. 1:25-cv-02020-EPG-HC<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER |

Petitioner, represented by counsel, is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States magistrate judge. (ECF Nos. 10, 12, 13.) For the reasons set forth herein, the petition for writ of habeas corpus is granted and Respondents are directed to immediately release Petitioner.

**I.**

**BACKGROUND**

Petitioner was born in Oaxaca, Mexico, and is a citizen of Mexico. (ECF No. 1 at 5; ECF No. 1-1 at 5.[1]) Petitioner entered the United States on April 25, 2021. (ECF No. 1 at 12.) On September 3, 2024, Petitioner was apprehended by U.S. Immigration and Customs Enforcement

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

1

("ICE") while working at a marijuana grow in Oregon[2] and detained at the Northwest Detention Center in Tacoma, Washington. (ECF No. 1 at 30.)

Petitioner's first individual hearing in her immigration case was set for February 26, 2025 in Tacoma, Washington. Although a motion requesting an interpreter in the San Vicente Coatlan Zapotec language for the individual hearing was filed on February 11, 2025, no interpreter was present at the hearing, which was reset for March 10, 2025. The hearing was later reset to July 14, 2025 because the immigration court was unable to find an appropriate interpreter. (ECF No. 1 at 27.)

On June 16, 2025, Petitioner was transferred to the Mesa Verde ICE Processing Center due to female detainee space issues at the Northwest Detention Center. Thus, the July 14, 2025 hearing was mooted. On July 17, 2025, Petitioner had a master hearing in the Adelanto Immigration Court. The individual hearing was set for September 2, 2025, but there was no San Vicente Coatlan Zapotec interpreter available. The immigration judge ("IJ") agreed to decide the case on the record after ICE filed a brief in support. On September 15, 2025, the IJ ordered withholding of removal to Mexico under the Immigration and Nationality Act ("INA"). (ECF No. 1 at 27–28.) On or about September 2, 2025, Petitioner was transferred to the California City Detention Center, where she is currently detained. (Id. at 5.)

On October 10, 2025, Petitioner's counsel emailed and mailed a letter, with attachments, to the ICE Fresno Field Office Director ("FOD") requesting the release of Petitioner. As of December 19, 2025, there has been no response from the FOD office/FOD director. (ECF No. 1 at 29.) As of December 19, 2025, Petitioner has received no notice of designation of a third country that would accept Petitioner by the Department of Homeland Security ("DHS"). (Id. at 23.)

---

[2] The petition alleges that Petitioner mistakenly believed that the operation was legal. She had been living in California and unable to find work. A friend told Petitioner that she could go to Oregon for work in the marijuana fields and that marijuana was legal in Oregon. Petitioner was told she would be paid $16 per hour to work at the grow. Once she arrived, Petitioner was not allowed to go off site from the fields and did not have any freedom of movement. The owner of the operation had brought a number of undocumented immigrants to assist with the harvest. Petitioner worked there for three days before the authorities arrived and ICE was called in. (ECF No. 1 at 30.)

2

On December 26, 2025, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.) Therein, Petitioner asserts: (1) her continued detention without a bond hearing violates due process; (2) she is entitled to release under Zadvydas v. Davis, 533 U.S. 678 (2001); and (3) threatened third country removal violates due process. (ECF No. 1 at 31–32.) On January 20, 2026, Respondents filed a response. (ECF No. 11.) To date, no reply has been filed, and the time for doing so has passed.

## II.

## DISCUSSION

### A. Respondents' Request for 180 Days to File Opposition to the Petition

The response states in pertinent part:

> The Department of Homeland Security opposes the issuance of a release order in this case. The Department of Homeland Security's position is that the detention authority in this case is lawful under the Constitution and applicable provisions of the Immigration and Nationality Act.
>
> However, based on prevailing trends in this District in equivalent cases, the undersigned forecasts that the Court will issue a temporary restraining order/and or preliminary injunction directing that Petitioner be immediately released and no further restraint be placed upon her without a hearing. If the Court issues Petitioner that or any other injunctive relief, Respondents request that the Court set a briefing schedule, with a deadline for filing Respondents' opposition to the habeas petition and any relevant documents set 180 days from the date of the Court's order. The purpose of this potentially lengthy extension request is to allow Respondents time to present informed briefing in a rapidly-evolving area of the law, where appeals are currently pending in the Ninth Circuit that are likely to have precedential effect on current immigration habeas litigation, including this case. In the event an injunction has issued, Petitioner will not be prejudiced by this lengthy briefing schedule.

(ECF No. 11 at 1.)

Respondents do not identify which Ninth Circuit appeals will impact the instant matter. The Court notes that Petitioner's Zadvydas claim does not implicate "a rapidly-evolving area of the law" given that Zadvydas was decided in 2001. In the December 30, 2025 order, the Court ordered Respondents to file a response to the *petition* rather than Petitioner's request for a temporary restraining order. (ECF No. 5.)

Accordingly, the Court denies Respondents' request for 180 days to file an opposition to the petition. The Court will rule on the merits of the petition.

**B.  Zadvydas**

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United States." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,'[3] a noncitizen 'may be detained' or may be released under terms of supervision." Id. "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Id. at 578–79 (quoting 8 U.SC. § 1231(a)(6)).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court "read an implicit limitation" into the statute "in light of the Constitution's demands," holding that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably

---

[3] "The removal period begins on the latest of three dates: (1) the date the order of removal becomes 'administratively final,' (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the alien is released from non-immigration detention or confinement." Johnson v. Guzman Chavez, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(B)). "During the removal period, detention is mandatory." Guzman Chavez, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(2)).

necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689.

> After [a presumptively reasonable] 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Zadvydas, 533 U.S. at 701.

Here, Petitioner asserts that the "removal period began on the 'date the order of removal becomes administratively final', 8 U.S.C. § 1231(a)(1)(B)(i), on September 15, 2025." (ECF No. 1 at 17.) Petitioner argues that the 90-day post-removal period "has passed as of December 16, 2025 and Plaintiff is eligible for release under supervision, 8 U.S.C. § 1231(a)(3)." (Id.) "In Zadvydas, the Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' and it further held that six months is a presumptively reasonable period." Jennings v. Rodriguez, 583 U.S. 281, 298–99 (2018) (internal citations omitted). Here, although Petitioner has been detained since September 3, 2024, her post-removal period detention has not exceeded the presumptively reasonable six-month period. However, the "six-month presumption of reasonability under Zadvydas is 'just that—a presumption.'" Burunsuzyan v. Noem, No. 5:26-CV-00049-RGK-AGR, 2026 WL 246067, at *5 (C.D. Cal. Jan. 27, 2026) (quoting Clark v. Martinez, 543 U.S. 371, 387 (2005) (O'Connor, J., concurring)). "Such a presumption is not a 'prohibition on claims challenging detention less than six months.'" Burunsuzyan, 2026 WL 246067, at *5 (quoting Hoang Trinh v. Homan, 333 F. Supp. 3d 984, 993 (C.D. Cal., 2018)). "The central holding of Zadvydas is that section 1231(a)(6) does not permit detention beyond the initial 90-day removal period when removal is not reasonably foreseeable. At no point did the Zadvydas Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-

month period." Hoang Trinh v. Homan, 466 F. Supp. 3d 1077, 1092 (C.D. Cal. 2020) (citation omitted). Accord Ndandu v. Noem, No. 3:25-CV-02939-RBM-MSB, 2026 WL 25848, at *3 (S.D. Cal. Jan. 5, 2026) ("Multiple district courts have found that the six-month presumption is rebuttable.") (collecting cases).

Zadvydas "held that detention for less than six months was *presumptively* reasonable but left the lower courts to determine whether detention has 'exceed[ed] a period reasonably necessary to secure removal' in individual cases." Hoang Trinh, 466 F. Supp. 3d at 1092 (quoting Zadvydas, 533 U.S. at 699). "Accordingly, we must assess whether Petitioner has established enough evidence that h[er] removal is not reasonably foreseeable." Burunsuzyan, 2026 WL 246067, at *5.

The petition alleges that "[t]here is no significant likelihood of removal of [Petitioner] known to [Petitioner] or her counsel in the reasonably foreseeable future." (ECF No. 1 at 18.) The petition lists multiple "[b]arriers to [Petitioner]'s removal becoming reasonably foreseeable," such as Petitioner's fluency in the San Vicente Coatlan Zapotec language, a dialect spoken by "approximately 4063 people according to Global Recordings Network" in a "specific region of Oaxaca," Mexico, "and a few communities in the United States that have a community of Zapotec San Vicente Coatlan speakers," and Petitioner's lack of fluency in the Spanish language, which "would logically make it difficult for any potential of third country . . . to accept her as a deportee due to the difficulty she would have attempting to adjust to life within that third country of removal." (ECF No. 1 at 19, 28.) The petition also alleges that "there is no known third country of removal identified," and "no notice to [Petitioner] of concrete plans of a potential third country . . . as of the time that [Petitioner] filed this habeas petition." (ECF No. 1 at 20, 23.)

"[A]t this juncture, the government is not entitled to remove [Petitioner] to [Mexico], and no other country has been identified to which [Petitioner] might be removed. Therefore, examining the circumstances objectively, one cannot say that [her] removal is reasonably foreseeable." Nadarajah v. Gonzales, 443 F.3d 1069, 1082 (9th Cir. 2006). "The government has not rebutted this showing, although it has had every opportunity to do so." Nadarajah, 443 F.3d

at 1082. "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." Zadvydas, 533 U.S. at 699–700.

Based on the foregoing and under Zadvydas, the Court finds Petitioner's continued detention is unreasonable and no longer authorized by statute.[4] Therefore, Petitioner should be released on appropriate conditions of supervision. See Zadvydas, 533 U.S. at 699–700; 8 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."); 8 C.F.R. § 241.5 (conditions for release after removal period). The Court recognizes that Petitioner was arrested while working at an illegal marijuana operation and there may be concerns about her release. However, as noted by Petitioner, "[s]he was never cited, indicted, or prosecuted in any way for her being present at the marijuana grow and subject to the direction of the operators there," (ECF No. 1-1 at 8), and any concerns can be addressed through the conditions of supervision imposed on Petitioner upon her release. See Thai v. Ashcroft, 366 F.3d 790, 797 (9th Cir. 2004) ("Like Ma, Thai is an ordinary violent criminal. If a need to protect the community did not justify the detention of Ma—a killer—under § 1231(a)(6), it similarly does not justify the detention of Thai.").

### C. Third Country Removal

Petitioner also challenges Respondents' third country removal policy and "requests that this Court order DHS/ICE to provide [Petitioner] and her attorney adequate time (two weeks) to respond to any attempt to deport [her] to a third country," "a reasonable fear hearing followed by an individual hearing where [Petitioner] can prove up her more likely than not persecution/torture in this alternate third country of removal location, if appropriate." (ECF No. 1 at 32.)

---

[4] Given this conclusion, the Court declines to address whether Petitioner's continued detention without a bond hearing violates due process.

"In recent months, the Government's policy regarding third country removals has shifted substantially. In particular, policy memoranda issued on March 30 [the Noem Memo] and July 9 [the Lyons memo] by DHS have become frequently discussed in similar cases[.]" Escobar v. Chestnut, No. 1:25-cv-01801-DJC-EFB, 2025 WL 3687639, at *2 (E.D. Cal. Dec. 19, 2025).

> The Noem Memo provides two different tracks for removals of noncitizens to third countries, determined primarily by whether the third country in question "has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured." (Noem Memo at 10). In instances in which the United States "has received such assurances," which the Department of State "believes to be credible," then "the alien may be removed *without the need for further procedures.*" (*Id.* at 10-11) (emphasis added).

> In instances where the United States has *not* received such assurances – or has received assurances but "does not believe them to be credible" – ICE is required to follow a separate procedure. (*Id.* at 11). In those cases, ICE will "inform the alien of removal to that country" but "will not affirmatively ask whether the alien is afraid of being removed to that country." (*Id.*). Only where a noncitizen "affirmatively states a fear of removal" will they be referred to "screening for eligibility for protection under INA § 241(b)(3) and the Convention Against Torture (CAT) for the country of removal." (*Id.*). The Noem Memo provides further guidance as to those noncitizens who *do* affirmatively state a fear of removal to the third country. (*Id.*). It states that the noncitizen will generally be screened within twenty-four hours, after which USCIS "will determine whether the alien would be more likely than not to be persecuted on a statutorily protected ground or tortured in the country of removal." Where a noncitizen does not meet this standard, they "will be removed." (*Id.*). If the noncitizen meets this standard, then the matter will be referred to Immigration Court. (*Id.*). Where the individual in question "was previously in proceedings before the Immigration Court," the immigration officer will inform ICE, which "may file a motion to reopen with the Immigration Court or the Board of Immigration Appeals, as appropriate, for further proceedings" to determine eligibility for protection under INA § 241(b)(3) or CAT for the country of removal. (*Id.*).

> The Lyons Memo was issued in light of the Supreme Court's granting the Government's application to stay the district court's nationwide preliminary injunction in *D.V.D. v. Dep't of Homeland Security*, No. 25-10676, 2025 WL 1142968 (D. Mass. Apr. 18, 2025). (Lyons Memo at 13-14). In short, the Lyons Memos provides that "ICE must adhere to [the Noem Memo]." (*Id.* at 13). It reaffirms that, in instances where the United States has received credible diplomatic assurances that "aliens removed from the United States will not be persecuted or tortured," that the noncitizen "may be removed without the need for further procedures." (*Id.*). It reiterates that, "in all other cases," ICE is to

> notify the noncitizen of the intended country of removal and "will *not* affirmatively ask whether the alien is afraid of being removed to the country of removal." (*Id.*) (emphasis in original). It further provides that ICE "will generally wait at least 24 hours following service of the Notice of Removal before effectuating removal[,]" but that such removal may be executed after six hours in "exigent circumstances[.]" (*Id.*). Where a noncitizen has not affirmatively stated a fear of persecution or torture "within 24 hours," then ICE "may proceed with removal to the country identified on the notice." (*Id.* at 14). The Lyons memo reiterates the procedure detailed in the Noem Memo for those noncitizens that do affirmatively express a fear of removal to the third country in question. (*Id.*).

Esmail v. Noem, No. 2:25-CV-08325-WLH-RAO, 2025 WL 3030589, at *1–2 (C.D. Cal. Sept. 26, 2025) (footnotes omitted).

Although "[t]here has been no notice to [Petitioner] of concrete plans of a potential third country removal as of the time that [Petitioner] filed this habeas petition," Petitioner raises this claim because "the government likely has [Petitioner] is in custody on the rationale it seeks a third country removal country for her." (ECF No. 1 at 23.) "It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshhold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983). "Abstract injury is not enough. The plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" Id. at 101–02 (citations omitted). See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 190 (2000) ("[I]n a lawsuit brought to force compliance, it is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the 'threatened injury [is] certainly impending.'" (second alteration in original) quoting Whitmore v. Arkansas, 495 U.S. 149, 158 (1990))).

> To have standing to assert a claim for prospective injunctive relief, a plaintiff must demonstrate "that he is realistically threatened by a repetition of [the violation]." *City of Los Angeles v. Lyons,* 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). We have "enumerated two ways in which a plaintiff can demonstrate that such injury is likely to recur." *Mayfield,* 599 F.3d at 971. "First, a plaintiff may show that the defendant had, at the time of the injury,

Case 1:25-cv-02020-EPG   Document 14   Filed 02/09/26   Page 10 of 14

> a written policy, and that the injury 'stems from' that policy." *Armstrong,* 275 F.3d at 861. "Second, the plaintiff may demonstrate that the harm is part of a 'pattern of officially sanctioned ... behavior, violative of the plaintiffs' [federal] rights.'" *Id.* (alterations in original), *quoting LaDuke v. Nelson,* 762 F.2d 1318, 1323 (9th Cir.1985).

Melendres v. Arpaio, 695 F.3d 990, 997–98 (9th Cir. 2012). "While this test is framed in terms of a past harm already experienced, a plaintiff is not strictly required to have *already suffered* a harm in order to seek prospective injunctive relief." Esmail, 2025 WL 3030589, at *5 n.7. "Rather, 'the plaintiff must demonstrate that he has suffered *or* is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way.'" Id. (internal quotation marks and citations omitted) (quoting Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007)).

"Where, as here, 'the harm alleged is directly traceable to a written policy . . . there is an implicit likelihood of its repetition in the immediate future.'" Bates, 511 F.3d at 986 (quoting Armstrong v. Davis, 275 F.3d 849, 861 (9th Cir. 2001), abrogated on other grounds by Johnson v. California, 543 U.S. 499, 504–05 (2005)). Accordingly, Petitioner has standing to bring a claim challenging Respondents' third country removal policy. See Esmail, 2025 WL 3030589, at *5 ("The Court is satisfied that, as a noncitizen with a removal order – who is, therefore, inherently subject to the policies articulated in the Noem and Lyons Memos – Petitioner has sufficiently demonstrated 'that he is realistically threatened by a repetition of the violation' at issue." (footnote and some internal quotation marks and citations omitted)).

"'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." Trump v. J. G.G., 604 U.S. 670, 673 (2025) (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)). "[A] basic tenet of constitutional due process [is] that individuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence." Andriasian v. I.N.S., 180 F.3d 1033, 1041 (9th Cir. 1999). Thus, "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported

violates both INS regulations and the constitutional right to due process." Andriasian, 180 F.3d at 1041. Accord Ibarra-Perez v. United States, 154 F.4th 989, 995 (9th Cir. 2025) ("DHS must also 'notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported'; otherwise, DHS violates their constitutional right to due process." (quoting Andriasian, 180 F.3d at 1041)).

Respondents' policy, as set forth in the Noem and Lyon memos, "contravenes Ninth Circuit law, as laid out above. It would be impossible to comply both with Ninth Circuit precedent and the policy." Nguyen, 796 F. Supp. 3d at 728 (citations omitted). See Vu, 2025 WL 3114341, at *9 ("ICE's policy is contrary to Ninth Circuit precedent."). Accordingly, the Petitioner is entitled to habeas relief on this ground.

With respect to what process is due to a noncitizen who seeks to adjudicate a fear-based claim before removal to a third country, the Court finds A.A.M. v. Andrews, No. 1:25-cv-01514-DC-DMC (HC), 2025 WL 3485219 (E.D. Cal. Dec. 4, 2025), instructive. In A.A.M., the district court stated:

> Several decisions from the Western District of Washington, however, have more thoroughly analyzed the constitutionally proper process by which a noncitizen may seek to adjudicate his fear-based claim before removal to a third country. In *Aden v. Nielsen*, 409 F. Supp. 3d 998 (W.D. Wash 2019) the court found that the noncitizen's right to due process in relation to his removal to a third country "includes the right to a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim." 409 F. Supp. 3d at 1010 (citing *Torres-Aguilar v. INS*, 246 F.3d 1267, 1270 (9th Cir. 2001)). Accordingly, the court in *Aden* found, "[g]iving petitioner an opportunity to file a motion to reopen—a motion which seeks discretionary relief that may be denied without any sort of hearing—is not an adequate substitute for the process that is due in [the third country removal] circumstances." *Id.* Applying that analysis directly to the DHS Third Country Removal Policy, the court in *Nguyen v. Scott*, No. 25-cv-01398, 2025 WL 2419288 at *18 (W.D. Wash. Aug. 21, 2025), found the "requirements set forth in *Aden* flow directly from binding Ninth Circuit precedent about due process protections before removal to a third country," "[t]hat Ninth Circuit precedent is binding on this Court," and "the application of that precedent in *Aden* is persuasive." 2025 WL 2419288 at *18. The court in *Nguyen* therefore issued a preliminary injunction finding that "Petitioner is likely to succeed on his claim that removal to a third country under [the DHS Third Country Removal

11

Policy], without meaningful notice and *reopening of his removal proceedings for a hearing*, would violate due process." *Id.* at 19 (emphasis added).

Further, in applying the holdings from *Aden* and *Nguyen*, the court in *Abubaka v. Bondi*, No. 25-cv-01889-RSL, 2025 WL 3204369, at *6 (W.D. Wash. Nov. 17, 2025) determined "on the merits of petitioner's argument that due process does not allow respondents to 'remove or seek to remove him to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings.' " The court in *Abubaka* emphasized that even though DHS's Third Country Removal Policy replaced the policy at issue in *Aden*, the "ruling in *Aden* remains persuasive today and therefore this Court adopts its holdings in *Aden* for the purposes of this ruling ...." *Id.* at 7; *see also Baltodano v. Bondi*, No. 25-cv-1958-RSL, 2025 WL 2987766, at *4 (granting motion for temporary restraining order enjoining Petitioner's removal to third country "without notice and a meaningful opportunity to respond in compliance with statute and due process in reopened removal proceedings").

This court finds these decisions from the Western District of Washington persuasive. Due Process requires that Petitioner receive a full and fair hearing of his fear-based claim in front of a neutral adjudicator. This requirement is not satisfied by simply providing Petitioner the time and opportunity to file a discretionary motion to reopen his immigration proceedings.

A.A.M., 2025 WL 3485219, at *11.

Accordingly, the Court will enjoin Respondents "from removing Petitioner via a third-country deportation to any country" if "Petitioner does assert a fear-based claim for relief from removal . . . without first providing [her] a meaningful opportunity to be heard on [her] fear-based claim before an immigration judge in compliance with due process." A.A.M. v. Andrews, No. 1:25-cv-01514-DC-DMC (HC), 2025 WL 3685159, at *7 (E.D. Cal. Dec. 19, 2025). See Arenado-Borges v. Bondi, No. 2:25-CV-02193-JNW, 2025 WL 3687518, at *7 (W.D. Wash. Dec. 19, 2025) (enjoining government "from removing or seeking to remove Petitioner to a third country without notice and a meaningful opportunity to respond in reopened removal proceedings before an Immigration Judge.").

**D. Attorney's Fees**

Petitioner has requested costs and attorney's fees in this action pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (ECF No. 1 at 33.) The EAJA provides in pertinent part:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412 (d)(1)(A)–(B). The Court will consider an application from Petitioner requesting and substantiating reasonable fees and costs under the EAJA that is filed within thirty days of the judgment.

## III.

## ORDER

Accordingly, the Court HEREBY ORDERS that:

1. The petition for writ of habeas corpus is GRANTED;

2. Respondents **SHALL IMMEDIATELY RELEASE** Petitioner under appropriate conditions of supervision set forth in 8 C.F.R. § 241.5;

3. Respondents are **ENJOINED AND RESTRAINED** from effectuating Petitioner's third country removal unless Respondents adhere to the following procedures:

   a. Provide Petitioner and her counsel a minimum of fourteen (14) days to raise a fear-based claim for protection prior to removal; and

   b. if Petitioner does assert a fear-based claim for relief from removal, Respondents must provide Petitioner a meaningful opportunity to be heard on her fear-based

claim before an immigration judge in compliance with due process; and

4. Within **THREE (3) days** of the date of service of this order, counsel for Respondents SHALL file a status report to confirm that Petitioner has been released.

IT IS SO ORDERED.

Dated:    **February 6, 2026**                   /s/ *Erica P. Grosjean*

UNITED STATES MAGISTRATE JUDGE

14